## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | CASE NO.: |
| ) | |
| v. ) | JUDGE: |
| ) | **08 0143** |
| PEARSON PLC, ) | DECK TYPE:  Antitrust |
| PEARSON EDUCATION INC., ) | |
| REED ELSEVIER PLC, ) | DATE STAMP: |
| REED ELSEVIER NV, and ) | |
| HARCOURT ASSESSMENT INC., ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

### FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on January 24, 2008,

and the United States and Defendants, Pearson plc and Pearson Education Inc. (collectively

"Pearson") and Reed Elsevier PLC, Reed Elsevier NV, and Harcourt Assessment Inc.

(collectively "Reed Elsevier"), by their respective attorneys, have consented to the entry of this

Final Judgment without trial or adjudication of any issue of fact or law, and without this Final

Judgment constituting any evidence against or admission by any party regarding any issue of fact

or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment

pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain

divestiture of certain rights or assets by the Defendants to assure that competition is not

1

substantially lessened;

AND WHEREAS, the United States requires Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. Definitions

As used in this Final Judgment:

A.      "Pearson" means Defendants Pearson plc, a U.K. corporation with its headquarters in London, England, and Pearson Education Inc., a Delaware corporation with its headquarters in Upper Saddle River, New Jersey, and includes their successors and assigns, and their subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.      "Reed Elsevier" means Defendants Reed Elsevier PLC, a U.K. corporation with

2

its headquarters in London, England, Reed Elsevier NV, a Dutch corporation with its

headquarters in Amsterdam, Netherlands, and Harcourt Assessment Inc., ("Harcourt") a New

York corporation with its headquarters in San Antonio, Texas and includes their successors and

assigns, and their subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and

their directors, officers, managers, agents, and employees.

      C.     "ABAS Assets" means Reed Elsevier's Adaptive Behavior Assessment System

("ABAS") first- and second-edition titles, incorporating the Downward Extension of the ABAS,

and Reed Elsevier's ABAS Second Edition Intervention Planner.

      D.     "Speech and Language Assets" means (1) Pearson's Comprehensive Assessment

of Spoken Language, ("CASL") which is in its first edition ("CASL Assets") and Pearson's Oral

and Written Language Scales ("OWLS"), including the Oral Expression and Listening

Comprehension Scales, the Written Expression Scale, and the OWLS second edition, which is

under development (collectively "OWLS Assets") or (2) Reed Elsevier's Clinical Evaluation of

Language Fundamentals ("CELF") including the first-, second-, third-, and fourth-edition titles,

the CELF Screener first-, second-, third-, and fourth-edition titles, the CELF Preschool first-, and

second-edition titles, the CELF Spanish first-, second-, third-, and fourth-edition titles, and the

CELF Spanish Preschool, which is under development; excluding however, the Retained CMS

and WMS Content (collectively "CELF Assets").

      E.     "EAS Assets" means Reed Elsevier's Emotional Assessment System, ("EAS")

which is under development.

F.    "Divestiture Assets" means: (1) the ABAS Assets; (2) the Speech and Language Assets; and (3) the EAS Assets.

The Divestiture Assets include:

1.    all tangible assets that comprise each of the Divestiture Assets including, but not limited to, all historic and current research data and activities and development activities relating to the Divestiture Assets; all original and digital artwork, film plates and other reproductive materials relating to the Divestiture Assets including, but not limited to, all manuscripts, illustrations, any other content, and any revisions or revision plans thereof in print or digital form; all finished inventory of the Divestiture Assets including, but not limited to, all examination kits, manuals, test booklets, record forms, and response booklets; all contracts, agreements, commitments, certifications, and understandings relating to the Divestiture Assets, including, but not limited to, publishing agreements, author agreements, research agreements, author permissions and other similar agreements, supply and distribution agreements for the Divestiture Assets; all customer lists, contracts, accounts, and credit records or similar records of all sales and potential sales of the Divestiture Assets; all sales support and promotional materials, advertising materials, and production, sales and marketing files, and all other records relating to the Divestiture Assets;

2.    all intangible assets used in the development, production, servicing, sale and distribution of each of the Divestiture Assets, including, but not limited to, all patents, licenses and sublicenses, adaptation licenses, intellectual property,

4

copyrights, contract rights, trademarks (registered and unregistered), trade names, service marks, and service names relating to the Divestiture Assets, but excluding corporate-level trademarks of Pearson and Harcourt; all technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, scoring rules, scoring algorithms, and specifications for materials relating to the Divestiture Assets; all quality assurance and control procedures, design tools and simulation capability relating to the Divestiture Assets; all manuals and technical information used for any purpose relating to the Divestiture Assets or that Defendants provide to their own employees, customers, suppliers, agents or licensees for use in relation with the Divestiture Assets; and all other intangible research data concerning historic and current research and development efforts relating to the Divestiture Assets, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments;

3.    the OWLS Assets also specifically include all tangible assets relating to the development of the OWLS second-edition titles including, but not limited to, all research data and development activities; all tryout and standardization easels, administration materials, record forms, tryout data, standardization data, and data for reliability and validity studies;

4.    the EAS Assets also specifically include all tangible and intangible assets relating to the development of the EAS including, but not limited, to all research data and development activities; all tryout and standardization easels, administration

5

materials, record forms, tryout data, standardization data, and data for reliability and validity studies; and all algorithmic data including, but not limited to, data relating to item banking, continuous item rotation, item analysis, item calibration, norming, test equating, scale development, computer-based testing, and computer-adaptive testing; and all applications of Sampling Theory, the Generalized Graded Unfolding model, Generalizability Theory model, Structural Equation model, and other Item Response Theory models;

5.      a royalty-free license to the Acquirer(s) of the ABAS Assets and CELF Assets to use the Harcourt corporate trademark and trade name for the sole and limited purpose of distributing finished inventory of the ABAS Assets and CELF Assets;

6.      at the option of the Acquirer(s) of the ABAS Assets and CELF Assets, a non-exclusive license to distribute the Scoring Assistant Software for use with the ABAS Assets and CELF Assets; and in the event that the Acquirer exercises such option, the Defendants shall provide to the Acquirer(s) of the ABAS Assets and CELF Assets all technical information and support necessary for the distribution and administration of the Scoring Assistant Software;

7.      a royalty-free license to the Acquirer of the CASL Assets and OWLS Assets to use the Pearson corporate trademark and trade name for the sole and limited purpose of distributing finished inventory of the CASL Assets and OWLS Assets;

8.      at the option of the Acquirer of the CASL Assets and OWLS Assets, a non-exclusive license to distribute the ASSIST Software for use with the CASL Assets and OWLS Assets; and in the event that the Acquirer exercises such option, the

Defendants shall provide to the Acquirer of the CASL Assets and OWLS Assets all technical information and support necessary for the distribution and administration of the ASSIST Software; and

9.    a license to the Acquirer of the CELF Assets to use the Retained CMS and WMS Content to market, sell or distribute any tests produced by the CELF Assets.

G.    "Acquirer" or "Acquirers" means the entity or entities to whom Defendants divest the Divestiture Assets.

H.    "Scoring Assistant Software" means Reed Elsevier's software for computerized scoring of individually-administered standardized norm-referenced comprehensive clinical tests ("clinical tests") to assist test administrators including, but not limited to, software related to scoring of test results; tracking test scores and test history; raw-to-derived score conversion; score interpretation; outcomes analysis and reporting capabilities; problem identification and eligibility determination; discrepancy analysis; and intervention recommendations.

I.    "ASSIST Software" means Pearson's Automated System for Scoring and Interpreting Standardized Tests and encompasses software for computerized scoring of clinical tests to assist test administrators including, but not limited to, software related to scoring of test results; tracking test scores and test history; raw-to-derived score conversion; score interpretation; outcomes analysis and reporting capabilities; problem identification and eligibility determination; discrepancy analysis; and intervention recommendations.

J.    "Licensed-Back ABAS Content" means the two hundred and forty one (241) ABAS items described in Exhibit A that, as of the filing of the Complaint in this matter, are also employed in the marketing, sale, and distribution of Reed Elsevier's Bayley Scales of Infant and

7

Toddler Development second- and third-edition titles.

K.      "Retained CMS and WMS Content" means the fifty (50) Children's Memory

Scale ("CMS") and Wechsler Memory Scale ("WMS") items that, as of the filing of the

Complaint in this matter, are also employed in the marketing, sale, and distribution of the CELF

Assets appearing as the Number Repetition 1 (15 items) and Familiar Sequences 1 (12 items)

subtests of the CELF-4, which are borrowed from the Numbers and Sequences CMS subtests,

respectively, and Number Repetition 2 (15 items) and Familiar Sequences 2 (8 items) subtests of

the CELF-4, which are borrowed from the Digit Span and Mental Control WMS subtests,

respectively.

### III.  Applicability

A.      This Final Judgment applies to Pearson and Reed Elsevier, as defined above, and

all other persons in active concert or participation with any of them who receive actual notice of

this Final Judgment by personal service or otherwise.

B.      If, prior to complying with Sections IV and V of this Final Judgment, Defendants

sell or otherwise dispose of all or substantially all of their assets or of lesser business units that

include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of

this Final Judgment.  Defendants need not obtain such an agreement from the Acquirer(s) of the

Divestiture Assets pursuant to this Final Judgment.

### IV.  Divestitures

A.      Defendants are ordered and directed, within ninety (90) calendar days after the

filing of the Complaint in this matter, or five (5) calendar days after notice of the entry of this

Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner

consistent with this Final Judgment to one or more Acquirers acceptable to the United States, in its sole discretion. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total, and shall notify the Court in such circumstances. Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

      B.     In accomplishing the divestitures ordered by this Final Judgment, Defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Defendants shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine. Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

      C.     Defendants shall provide the Acquirer(s) and the United States the identity of any personnel responsible for any editorial content of any Divestiture Asset, and any personnel responsible for the sale, development, production, design, layout, standardization, norming, analysis, or research relating to any of the Divestiture Assets, to enable the Acquirer(s) to make offers of employment. Defendants will not interfere with any negotiations or attempts by the Acquirer(s) to employ or contract with any persons responsible for any such activity related to any Divestiture Asset.

D.      Defendants shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel responsible for the Divestiture Assets; and to have access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

E.      Defendants shall have the right to obtain, from the Acquirer of the ABAS assets, a license to use the Licensed-Back ABAS Content for a period of time no longer than is necessary for Defendants to market, sell or distribute Reed Elsevier's Bayley Scales of Infant and Toddler Development second- and third-edition titles; such license shall be subject to final review and approval by the United States.

F.      To the extent Defendants receive any orders or inquiries for the ABAS, the CASL, the OWLS, or the CELF, and an Acquirer has obtained the Divestiture Assets relating to such test, Defendants shall forward such orders and inquiries to the respective Acquirer for a period of time not to exceed two (2) years.

G.      Defendants shall warrant to the respective Acquirer or Acquirers of the ABAS Assets, the CASL Assets and OWLS Assets, and the CELF Assets, that the respective Divestiture Assets will be operational on the date of sale. Defendants shall warrant to the Acquirer of the EAS Assets that the EAS Assets have been developed in a manner no less vigorous than existing development plans, as of the filing of the Complaint in this matter, and maintained in a manner that has preserved the economic viability of the assets, and that, upon divestiture, Acquirer will receive good title to all the assets that comprise the EAS Assets as of the date of sale. Defendants shall warrant to the Acquirer or Acquirers that the Divestiture Assets they acquire have been maintained and operated separately in a manner as required under the Hold Separate

10

Stipulation and Order ("Hold Separate") filed simultaneously with the Court.

      H.     Nothing in this Final Judgment shall be construed to require the Acquirer or

Acquirers as a condition of any license granted by or to Defendants pursuant to Sections II (F)(6),

(8), and (9) and IV (E) to extend to Defendants the right to use any improvements made by the

Acquirer or Acquirers to any software or content used in the marketing, sale or distribution of

clinical tests.

      I.     Defendants shall not take any action that will impede in any way the operation or

divestiture of the Divestiture Assets.

      J.     Unless the United States otherwise consents in writing, the divestitures pursuant

to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include

the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United

States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer(s) as

part of a viable, ongoing business of publishing clinical tests.  Divestiture of the Divestiture

Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated

to the sole satisfaction of the United States that the Divestiture Assets will remain viable and the

divestiture of such assets will remedy the competitive harm alleged in the Complaint.  The

divestitures, whether pursuant to Section IV or Section V of this Final Judgment,

            (1)     shall be made to an Acquirer(s) that, in the United States's sole

                    judgment, has the intent and capability (including the necessary

                    managerial, operational, technical and financial capability) of

                    competing effectively in the business of publishing clinical tests;

                    and

11

(2)    shall be accomplished so as to satisfy the United States, in its

sole discretion, that none of the terms of any agreement between

an Acquirer(s) and Defendants give Defendants the ability

unreasonably to raise the Acquirer's costs, to lower the

Acquirer's efficiency, or otherwise to interfere in the ability of

the Acquirer to compete effectively.

## V. Appointment of Trustee

A.    If Defendants have not divested the Divestiture Assets within the time period specified in Section IV(A), Defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.    After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer(s) acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestitures.

C.    Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by Defendants must be conveyed in writing to the

United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

      D.     The trustee shall serve at the cost and expense of Defendants, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to Defendants and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

      E.     Defendants shall use their best efforts to assist the trustee in accomplishing the required divestitures. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and Defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestitures.

      F.     After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestitures ordered under this Final Judgment. To the extent such reports contain information that the trustee deems

13

confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

        G.    If the trustee has not accomplished the divestitures ordered under this Final Judgment within six months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestitures, (2) the reasons, in the trustee's judgment, why the required divestitures have not been accomplished, and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI. Notice of Proposed Divestitures

        A.    Within two (2) business days following execution of a definitive divestiture agreement, Defendants or the trustee, whichever is then responsible for effecting the divestitures required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify Defendants.

14

The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

      B.     Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Acquirer(s), any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

      C.     Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer, any third party, and the trustee, whichever is later, the United States shall provide written notice to Defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Section V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by Defendants under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

15

## VII. Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII. Hold Separate

Until the divestitures required by this Final Judgment have been accomplished, Defendants shall take all steps necessary to comply with the Hold Separate entered by this Court. Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

## IX. Affidavits

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestitures have been completed under Section IV or V, Defendants shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts Defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by Defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

16

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter,

Defendants shall deliver to the United States an affidavit that describes in reasonable detail all

actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to

comply with Section VIII of this Final Judgment.  Defendants shall deliver to the United States

an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier

affidavits filed pursuant to this section within fifteen (15) calendar days after the change is

implemented.

C.      Defendants shall keep all records of all efforts made to preserve and divest the

Divestiture Assets until one year after such divestitures have been completed.

## X. Compliance Inspection

A.      For the purposes of determining or securing compliance with this Final Judgment,

or of determining whether the Final Judgment should be modified or vacated, and subject to any

legally recognized privilege, from time to time authorized representatives of the United States

Department of Justice, including consultants and other persons retained by the United States,

shall, upon written request of an authorized representative of the Assistant Attorney General in

charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

> (1)      access during Defendants' office hours to inspect and copy, or at the
>
> option of the United States, to require Defendants to provide hard copy or
>
> electronic copies of, all books, ledgers, accounts, records, data, and
>
> documents in the possession, custody, or control of Defendants, relating to
>
> any matters contained in this Final Judgment; and
>
> (2)      to interview, either informally or on the record, Defendants' officers,

17

employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.    No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.    If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI.  **No Reacquisition**

Pearson may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XII.  **Retention of Jurisdiction**

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII.  **Expiration of Final Judgment**

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

### XIV.  **Public Interest Determination**

Based on the description concerning the public interest that is contained in the Motion and Memorandum of the United States in Support of Entry of Final Judgment, the Court finds that entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment and the Competitive Impact Statement, and no comments or objections were received.  Based upon the record before the Court, which includes the Competitive Impact Statement, entry of this Final Judgment is in the public interest.

Date: June 2, 2008

> Court approval subject to procedures of
> Antitrust Procedures and Penalties Act, 15
> U.S.C. § 16
>
> /s/ Colleen Kollar-Kotelly
> COLLEEN KOLLAR-KOTELLY
> United States District Judge